AO 106 (Rev. 7/87) Affidavit for Search Warrant

# United States District Court

DISTRICT OF __DELAWARE__

In the Matter of the Search of
(Name, address or brief description of person, property or premises to be searched)

▮ New Castle, Delaware 19720, described more particularly on Attachment A

**APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT**

CASE NUMBER: 05- 137 M

I __William J. Shields, ICE Special Agent__ being duly sworn depose and say:

I am a(n) __Special Agent__ and have reason to believe
          Official Title

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

▮ New Castle, Delaware, described more particularly on Attachment A

in the _____ District of __Delaware__
there is now concealed a certain person or property, namely (describe the person or property to be seized)

the items listed on Attachment B

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)

evidence of a crime

concerning a violation of Title __18__ United States code, Section(s) __2252A__.
The facts to support a finding of Probable Cause are as follows: AFFIDAVIT attached.

Continued on the attached sheet and made a part hereof.    ☒ Yes   ☐ No

_William J. Shields_
Signature of Affiant
William J. Shields
Special Agent, Immigration & Customs Enforcemen

Sworn to before me, and subscribed in my presence

__December 16, 2005__                    at    __Wilmington, Delaware__
Date                                              City and State

Honorable Mary Pat Thynge
United States Magistrate Judge
Name and Title of Judicial Officer    Signature of Judicial Officer

## ATTACHMENT A - DESCRIPTION OF PROPERTY TO BE SEARCHED

███████████, New Castle, Delaware, 19720, is a two-story, single-family dwelling. The structure has yellow vinyl siding and white trim and shutters on all windows viewable from the street. The roof is brown. The second floor has two single windows on the front. The front of the first floor has one double/picture window to the right side, and a white door to the left side. There is a covered porch on the left front of the house, in the front door area. Attached to the left side of the house is a one-car garage. The garage is yellow vinyl siding with a white door and trim. There is a black ███ over the garage door. A tan, freestanding mailbox is in the front yard, bordering the street. The mailbox is marked ███████. The number ███ is also painted in black on the street curbing in front of the subject premises driveway.

## ATTACHMENT B - ITEMS TO BE SEARCHED FOR AND SEIZED

1. Images of child pornography and files containing images of child pornography in any form wherever it may be stored or found including, but not limited to:

    a. any computer, computer system and related peripherals; tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drive and other computer related operation equipment, digital cameras, scanners, computer photographs, Graphic Interchange formats and/or photographs, undeveloped photographic film, slides, and other visual depictions of such Graphic Interchange formats (including, but not limited to, JPG, GIF, TIF, AVI, and MPEG), and any electronic data storage devices including, but not limited to hardware, software, diskettes, backup tapes, CD-ROMS, DVD, Flash memory devices, and other storage mediums; any input/output peripheral devices, including but not limited to passwords, data security devices and related documentation, and any hardware/software manuals related to or used to: visually depict child pornography; contain information pertaining to the interest in child pornography; and/or distribute, receive, or possess child pornography, or information pertaining to an interest in child pornography.

    b. books and magazines containing visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

    c. originals, copies, and negatives of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

    d. motion pictures, films, videos, and other recordings of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

2. Information or correspondence pertaining to the possession or attempted distribution of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256, that were transmitted or received using computer, some other facility or means of interstate or foreign commerce, common carrier, or the U.S. mail including, but not limited to:

    a. envelopes, letters, and other correspondence including, but not limited to, electronic mail, chat logs, and electronic messages, establishing possession, access to, or transmission through interstate or foreign commerce, including by United States mail or by computer, of visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256; and

    b. books, ledgers, and records bearing on the production, reproduction, receipt, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission through interstate or foreign commerce including by United States mail or by computer of any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256;

3. Bank and credit card records, including but not limited to payments to Comcast.

4. Records evidencing occupancy or ownership of the premises described above, including, but not limited to, utility and telephone bills, mail envelopes, or addressed correspondence; and

5. Records or other items which evidence ownership or use of computer equipment found in the above residence, including, but not limited to, sales receipts, bills for Internet access, handwritten notes, and email addresses ██████@yahoo.com and ██████@comcast.net.

## AFFIDAVIT

1.  I am a Senior Special Agent with the United States Immigration and Customs Enforcement ("ICE"). I am a federal law enforcement officer authorized by the Secretary of Homeland Security to request the issuance of search warrants. I have been employed as a Special Agent for the ICE (and its predecessor, the United States Customs Service) for twenty-two years, and am currently assigned to the Wilmington, Delaware, Office of Investigations. I was previously assigned to the Philadelphia Office of Investigations for approximately twenty-one years, where my responsibilities included conducting investigations into financial crimes, commercial fraud, child pornography smuggling, asset removal, and narcotics smuggling.

2.  Pursuant to 18 U.S.C. § 2251 et seq., I am authorized to investigate crimes involving the sexual exploitation of children. Sections 2252 and 2252A make it a federal crime for any person to knowingly receive or distribute child pornography that has been mailed or has been shipped or transported in foreign commerce, or which contains materials which have been mailed or so shipped or transported, by any means including by computer. That section also makes it illegal to knowingly reproduce any visual depiction for distribution in foreign commerce by any means including by computer or through the mails. I have participated in investigations of persons suspected of violating federal child pornography laws, including Title 18 U.S.C. §§ 2251, 2252 and 2252A.

3.  I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have received training from ICE and its predecessors (the United States Customs Service (USCS)), regarding child pornography, the sexual abuse of children, the behavior of preferential child molesters, and how to conduct investigations of child sexual exploitation and obscenity. In the course of my duties, I have had contact, in the form

of interviews and meetings, with preferential child pornographers and those involved in the distribution, sale, processing and/or producing of child pornography.

4.  This Affidavit is made in support of an application for a warrant to search the entire premises located at ▮▮▮▮▮▮ New Castle, Delaware, 19720-3801 (the "SUBJECT PREMISES"). The SUBJECT PREMISES to be searched is more particularly described as:

> ▮▮▮▮▮▮ New Castle, Delaware, 19720, is a two-story, single-family dwelling. The structure has yellow vinyl siding and white trim and shutters on all windows viewable from the street. The roof is brown. The second floor has two single windows on the front. The front of the first floor has one double/picture window to the right side, and a white door to the left side. There is a covered porch on the left front of the house, in the front door area. Attached to the left side of the house is a one-car garage. The garage is yellow vinyl siding with a white door and trim. There is a black ▮▮ over the garage door. A tan, freestanding mailbox is in the front yard, bordering the street. The mailbox is marked ▮▮▮▮▮▮ The number ▮▮ is also painted in black on the street curbing in front of the subject premises driveway.

4.  The purpose of this application is to seize evidence of violations of 18 U.S.C. §§ 2252 and 2252A, which among other things make it a crime to possess and distribute child pornography in interstate commerce by computer.

5.  I am familiar with the information contained in this Affidavit based upon the investigation I have personally conducted and based on my conversations with other law enforcement officers involved in this and other investigations.

6.  Because this Affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only those facts that I believe are necessary to establish probable cause to believe that evidence of violations of 18 U.S.C. §§ 2252 and 2252A are located at the SUBJECT PREMISES and within a computer and related peripherals, and computer media found at the SUBJECT PREMISES. Where statements of others are set forth in this Affidavit, they are set forth in substance and in part.

7.   As a result of the instant investigation described more fully below, there is probable cause to believe that evidence, fruits, and instrumentalities of violations of federal law, including 18 U.S.C. §§ 2252 and 2252A, are present at the SUBJECT PREMISES.

8.   The instant investigation has revealed that an individual assigned the Internet Protocol address ("IP address") ▓▓▓▓▓▓▓ on July 25, 2005, 2:35:19 GMT (Greenwich Mean Time) +0000, possessed child pornography on a computer that is located at the SUBJECT PREMISES and made child pornography available to other computer users. Paragraph 9 explains computer-related technical terms and concepts relevant to this investigation. Paragraphs 10 and 11 explain how computers and computer technology have revolutionized the way in which child pornography is produced, utilized and distributed.

## The Internet and Definitions of Technical Terms

9.   Set forth below are some definitions of technical terms, used throughout this Affidavit, and in Attachments A and B hereto, pertaining to the Internet and computers more generally.

   a. **Computer system and related peripherals, and computer media**: As used in this affidavit, the terms "computer system and related peripherals, and computer media" refer to tapes, cassettes, cartridges, streaming tape, commercial software and hardware, computer disks, CDs, DVDs, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, hardware and software operating manuals, tape systems and hard drives and other computer-related operation equipment, digital cameras, compact flash cards, scanners, in addition to computer photographs, Graphic Interchange formats and/or photographs, and other visual depictions of such Graphic Interchange formats, including, but not limited to, JPG, GIF, TIF, AVI, and MPEG.

3

b. **MD5 Hash Value:** A hash value, also known as a message digest, is a mathematical value generated by applying an algorithm to a computer file. Hash values play a role in security systems where they are used to ensure that transmitted messages have not been tampered with. An MD5 hash value is 16-character hexadecimal value calculated by applying the MD5 algorithm to a computer file. I have consulted with ICE Special Agent Doug Green who has informed me that among computer forensics professionals, the MD5 hash value is generally considered to be a unique signature or fingerprint for a file.

c. **Fast Track Hash Value:** A MD5 hash value generated using the first 300KB (307200 bytes) of data from a file.

d. **Internet Service Providers (ISPs) and the Storage of ISP Records:** Internet Service Providers are commercial organizations that are in business to provide individuals and businesses access to the internet. ISPs provide a range of functions for their customers including access to the Internet, web hosting, e-mail, remote storage, and co-location of computers and other communications equipment. ISPs can offer a range of options in providing access to the Internet including telephone based dial-up, broadband based access via digital subscriber line (DSL) or cable television, dedicated circuits, or satellite based subscription. ISPs typically charge a fee based upon the type of connection and volume of data, called bandwidth, that the connection supports. Many ISPs assign each subscriber an account name – a user name or screen name, an "e-mail address," an e-mail mailbox, and a personal password selected by the subscriber. By using a computer equipped with a modem, the subscriber can establish communication with an ISP over a telephone line, through a cable system or via satellite, and can access the Internet by using his or her account name and personal password. ISPs maintain records ("ISP records") pertaining to

4

their subscribers (regardless of whether those subscribers are individuals or entities). These records may include account application information, subscriber and billing information, account access information (often times in the form of log files), e-mail communications, information concerning content uploaded and/or stored on or via the ISP's servers, and other information, which may be stored both in computer data format and in written or printed record format. ISPs reserve and/or maintain computer disk storage space on their computer system for their subscribers' use. This service by ISPs allows for both temporary and long-term storage of electronic communications and many other types of electronic data and files. Typically, e-mail that has not been opened by an ISP customer is stored temporarily by an ISP incident to the transmission of that e-mail to the intended recipient, usually within an area known as the home directory. Such temporary, incidental storage is defined by statute as "electronic storage," see 18 U.S.C. § 2510(17), and the provider of such a service is an "electronic communications service." An "electronic communications service," as defined by statute, is "any service, which provides to users thereof the ability to send or receive wire or electronic communications. 18 U.S.C. § 2510(15). A service provider that is available to the public and provides storage facilities after an electronic communication has been transmitted and opened by the recipient, or provides other long term storage services to the public for electronic data and files, is defined by statute as providing a "remote computing service." 18 U.S.C. § 2711(2).

e. **IP Address:** Every computer or device on the Internet is referenced by unique Internet Protocol address the same way every telephone has a unique telephone number. An IP address is a series of four numbers separated by a period, and each number is a whole number between 0 and 255. An example of an IP address is 192.168.10.102. Each time an

5

individual accesses the Internet, the computer from which that individual initiate access is assigned an IP address. A central authority provides each ISP a limited block of IP addresses for use by that ISP's customers or subscribers. Most ISP's employ dynamic IP addressing that is they allocate any unused IP address at the time of initiation of an Internet session each time a customer or subscriber accesses the Internet. A dynamic IP address is reserved by an ISP to be shared serially among a group of computers over a period of time. The ISP logs the date, time and duration of the Internet session for each IP address and can identify the user of that IP address for such a session from these records. Typically, users who sporadically access the Internet via a dial-up modem will be assigned an IP address from a pool of IP addresses for the duration of each dial-up session. Once the session ends, the IP address is available for the next dial-up customer. On the other hand, some ISP's, including most cable providers, employ static IP addressing, that is a customer or subscriber's computer is assigned one IP address that is used to identify each and every Internet session initiated through that computer. In other words, a static IP address is an IP address that does not change over a period of time and is typically assigned to a specific computer.

### **Computers and Child Pornography**

10. Based upon my knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, computers and computer technology has revolutionized the way in which child pornography is produced, distributed and utilized. Prior to the advent of computers and the Internet, child pornography was produced using cameras and film, resulting in either still photographs or movies. The photographs required darkroom facilities and a significant amount of skill in order to

develop and reproduce the images. As a result, there were definable costs involved with the production of pornographic images. To distribute these images on any scale also required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls, and compensation for these wares would follow the same paths. More recently individuals distribute child pornography over the internet, allowing them to remain relatively anonymous.

11. In addition, based upon my own knowledge, training, and experience in child exploitation and child pornography investigations, and the experience and training of other law enforcement officers with whom I have had discussions, those who engage in viewing child pornography also maintain a collection of child pornography. The development of computers has also revolutionized the way in which child pornography collectors interact with, and sexually exploit, children. Computers serve four basic functions in connection with child pornography: production, communication, distribution, and storage/collection. More specifically, the development of computers has changed the methods used by child pornography collectors in these ways:

a. Producers of child pornography can now produce both still and moving images directly from a common video or digital camera. The camera is attached, using a device such as a cable, or digital images are often uploaded from the camera's memory card, directly to the computer. Images can then be stored, manipulated, transferred, or printed directly from the computer. Images can be edited in ways similar to how a photograph may be altered. Images can be lightened, darkened, cropped, or otherwise manipulated. The producers of child pornography can also use a device known as a scanner to transfer photographs into a computer-readable format. As a result of this technology, it is relatively

inexpensive and technically easy to produce, store, and distribute child pornography. In addition, there is an added benefit to the pornographer in that this method of production does not leave as large a trail for law enforcement to follow.

b. The Internet allows any computer to connect to another computer. Electronic contact can be made to literally millions of computers around the world.

c. The Internet allows users, while still maintaining anonymity, to easily locate (I) other individuals with similar interests in child pornography; and (ii) web sites that offer images of child pornography. Child pornography collectors can use standard Internet connections, such as those provided by businesses, universities, and government agencies, to communicate with each other and to distribute child pornography. These communication links allow contacts around the world as easily as calling next door. Additionally, these communications can be quick, relatively secure, and as anonymous as desired. All of these advantages, which promote anonymity for both the distributor and recipient, are well known and are the foundation of transactions between child pornography collectors over the Internet.

d. The computer's capability to store images in digital form makes it an ideal repository for child pornography. A single disk can store dozens of images and hundreds of pages of text. The size of the electronic storage media (commonly referred to as a hard drive) used in home computers has grown tremendously within the last several years. Hard drives with the capacity of 120 or more gigabytes are not uncommon. These drives can store tens of thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that

image to storage in another country. Once this is done, there is no readily apparent evidence at the "scene of the crime." Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

### Probable Cause to Search the Subject Premises

12. The ICE office in Knoxville works in conjunction with the Internet Crimes Against Children (ICAC) Task Force in Knoxville to combat the internet-based production and transfer of child pornography. During August 2005, the ICE office in Knoxville received information from the ICAC Knoxville that an internet user associated with the internet address of ████@yahoo.com, had child pornography stored on his online photo album.

13. On June 11, 2005, Knoxville, TN Police Department Detective Tom Evans, of the ICAC Knoxville, received a personal computer from the Greene County, TN Sheriff's Office, for forensic examination. A computer had been seized in Kentucky during a consent search of a residence. The Kentucky suspect admitted that he had downloaded child pornography images from Yahoo users but had deleted the images from his computer.

14. Detective Evans examined the seized computer and recovered information which identified Yahoo users who had posted child pornography images. One such user was an individual who used the e-mail address of ████@yahoo.com. Hereinafter referred to as ████

15. On August 3, 2005, ICE Special Agent Michelle Patterson issued a Customs Summons to Yahoo Inc. for the subscriber records of the e-mail address ████' Yahoo Inc. provided information disclosing that the ████ account was created on April 27, 2003. The individual opening the account gave his/her name as ████ an alternate e-mail address of ████@comcast.net, and an address "Newark, DE 19702." The Yahoo records also reflected that

9

the last two internet logins for ▉ occurred on July 25, 2005, 02:35:19 and 02:48:01, Greenwich Mean Time, using the IP Address ▉

16. Special Agent Patterson conducted queries, which disclosed that Comcast Cable was the Internet service provider for Internet Protocol (IP) Address ▉

17. On August 22, 2005, Special Agent Patterson issued a Customs Summons to Comcast Cable for subscriber information associated with the screen name ▉@comcast.net and IP address ▉ on July 25, 2005, at 02:35:19 GMT.

18. On September 2, 2005, Comcast Cable responded to the Summons, providing information that the subscriber of IP address ▉ on July 25, 2005, 02:35:19, Greenwich Mean Time, was Lynn D'Angelo ▉, New Castle, DE 19720-3801, telephone ▉ and that the type of service provided was "Residential High Speed Internet." Comcast information confirmed that the e-mail address ▉@comcast.net was one of four email addresses listed for the D'Angelo account. Comcast information also disclosed that the current IP Address of the D'Angelo account was ▉ and was dynamically assigned. This IP address is the same address the ▉ used to access the internet on July 25, 2005.

19. On or about September 9, 2005, Detective Evans accessed the Yahoo Profile of ▉ and found child pornography images contained in a photo folder entitled "teens." Detective Evans made an electronic recording of the material that he viewed on ▉ online Yahoo Profile and photo folder.

20. On September 21, 2005, your affiant received an investigative report from the ICE office in Knoxville, Tennessee, detailing the aforementioned information disclosed by law enforcement officers in Knoxville. Included in this report was an electronic copy of Det. Evans' referenced recording of ▉'s online Yahoo photo album. On September 27, 2005, your affiant viewed

the recording. The ▓▓▓▓'s adult profile" listed his age as 30, his sex as male, and his location as Delaware. He listed his hobbies as "Masturbation. Love pics/vids of young teen girls, pregnant women, pissing, shemales, etc. I am a fetishist, if its kinkiy, Im in to it." (Sic) Captioned under "▓▓▓▓photos" is included two files, one of which is titled "Teens." Within that file are two separate images, one of which depicts what appears to your affiant to be a minor and pre-pubescent female engaged in a sex act. At the time your affiant viewed the images, Special Agent Douglas Green, ICE, a member of an investigative group which conducts child pornography investigations, also viewed the images and advised your affiant that he was familiar with this photograph from previous investigations and that it depicted a European minor.

21. New Castle County, Delaware, property records reflect that the real property a▓▓▓▓ ▓▓▓▓New Castle, DE 19720, referred to in the county records as Parcel▓▓▓▓document▓▓▓▓, is presently owned by Lynn D'Angelo and Craig D'Angelo. (One of the above referenced screen names is ▓▓▓▓@comcast.net.)

22. Delaware Department of Motor Vehicles records reflect that Craig Michael D'Angelo holds Delaware Operator's License Number▓▓▓▓ D'Angelo's identification information, submitted by him for his license, reflects his address as▓▓▓▓ New Castle, DE 19720.

23. On December 13, 2005, your affiant spoke with Detective Evans of the Knoxville Police Department. Det. Evans advised that on that date, at approximately 12:40 pm, Eastern Standard Time, he again viewed the online Yahoo Profile of▓▓▓▓@yahoo.com. Det. Evans advised that two child pornography images were contained in the Profile photo file, the same two that he had viewed on ▓▓▓▓Profile on September 9, 2005.

24. Based upon the information provided by Yahoo Inc., Comcast Cable Inc., and the other information disclosed by this investigation, your affiant believes that there is probable cause that the

individual using the e-mail address ▓▓▓▓@yahoo.com and who accessed the internet using IP Address ▓▓▓▓, did so from a computer located at the SUBJECT PREMISES. There is also probable cause that there are child pornography imaged stored upon said computer, in violation of Title 18, United States Code, Section 2252.

25. Based upon my own knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the distribution and collection of child pornography:

a. Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

b. Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media. Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

c. Collectors of child pornography almost always possess and maintain their "hard copies" of child pornographic material, that is, their pictures, films, video tapes, magazines, negatives, photographs, correspondence, mailing lists, books, tape recordings, etc., in the privacy and security of their home. Child pornography collectors typically retain pictures,

films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica and video tapes for many years.

d. Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

e. Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

f. Collectors of child pornography prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

26. The undersigned affiant submits that there is probable cause to believe that there is a collector of child pornography at the SUBJECT PREMISES.

27. Finally, based upon the conduct of individuals involved in the collection of child pornography set forth above ~~in paragraph 25~~, namely, that they tend to maintain their collections at private location for long periods of time, there is probable cause to believe that evidence of the offenses of receiving and possessing child pornography is currently located at the SUBJECT PREMISES. Even if such images have been deleted, a forensics examination of the subject computer is likely to recover those images.

13

## Specifics Regarding the Seizure and Searching of Computer Systems

28. Based on my own experience and consultation with other agents who have been involved in the search of computers and retrieval of data from computer systems and related peripherals, and computer media, there are several reasons why a complete search and seizure of information from computers often requires seizure of all electronic storage devices, as well as all related peripherals, to permit a thorough search later by qualified computer experts in a laboratory or other controlled environment:

   a. Computer storage devices, such as hard disks, diskettes, tapes, and laser disks can store the equivalent of hundreds of thousands of pages of information. Additionally, when an individual seeks to conceal information that may constitute criminal evidence, that individual may store the information in random order with deceptive file names. As a result, it may be necessary for law enforcement authorities performing a search to examine all the stored data to determine which particular files are evidence or instrumentalities of criminal activity. This review and sorting process can take weeks or months, depending on the volume of data stored, and would be impossible to attempt during a search on site; and

   b. Searching computer systems for criminal evidence is a highly technical process, requiring expert skill and a properly controlled environment. The vast array of computer hardware and software available requires even those who are computer experts to specialize in some systems and applications. It is difficult to know before a search what type of hardware and software are present and therefore which experts will be required to analyze the subject system and its data. In any event, data search protocols are exacting scientific procedures designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is

extremely vulnerable to inadvertent or intentional modification or destruction (both from external sources or from destructive code imbedded in the system as a booby trap), a controlled environment is essential to its complete and accurate analysis.

29. Based on my own experience and my consultation with other agents who have been involved in computer searches, searching computerized information for evidence or instrumentalities of a crime often requires the seizure of all of a computer system's input and output peripheral devices, related software, documentation, and data security devices (including passwords) so that a qualified computer expert can accurately retrieve the system's data in a laboratory or other controlled environment. There are several reasons that compel this conclusion:

a. The peripheral devices that allow users to enter or retrieve data from the storage devices vary widely in their compatibility with other hardware and software. Many system storage devices require particular input/output devices in order to read the data on the system. It is important that the analyst be able to properly re-configure the system as it now operates in order to accurately retrieve the evidence listed above. In addition, the analyst needs the relevant system software (operating systems, interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media), as well as all related instruction manuals or other documentation and data security devices; and

b. In order to fully retrieve data from a computer system, the analyst also needs all magnetic storage devices, as well as the central processing unit (CPU). In cases like the instant one where the evidence consists partly of image files, the monitor and printer are also essential to show the nature and quality of the graphic images which the system could produce. Further, the analyst again needs all the system software (operating systems or

15

interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media) for proper data retrieval.

### Conclusion

30.   Based on the above information, there is probable cause to believe that 18 U.S.C. §§ 2252 and 2252A, which, among other things, make it a federal crime for any person to knowingly possess, transport or distribute child pornography, have been violated, and that the following property, evidence, fruits and instrumentalities of these offenses are located at the SUBJECT PREMISES. This affiant requests authority to seize the computer as an instrumentality of the crime.

31.   Based upon the foregoing, this affiant respectfully requests that this Court issue a search warrant for the SUBJECT PREMISES, more particularly described in Attachment A, authorizing the seizure of the items described in Attachment B.

_____
William J. Shields
Special Agent, ICE

Sworn and Subscribed before me
this _16_ day of _December_, 2005.

_____
HONORABLE MARY PAT THYNGE
United States Magistrate Judge

16